| 86 | 247 |
| 153 | 166 |
| 86 | 247 |
| 184 | 324 |

## Huntingdon and Broad Top Railroad and Coal Co. *versus* English.

Where there is no trust relation between the parties and no obligation to deliver specific stock, the measure of damages for a failure to deliver stock is the market value of the stock on the day it should have been delivered with interest thereon to the time of trial.

February 8th 1878.   Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and TRUNKEY, JJ.   WOODWARD, J., absent.

Error to the Court of Common Pleas, No. 2, of *Philadelphia county*: Of January Term 1876, No. 117.

Assumpsit by Alfred English against the Huntingdon and Broad Top Railroad and Coal Company.

Defendants pleaded *non assumpserunt.*

The plaintiff having loaned the defendants two hundred shares of Pennsylvania Railroad stock, took from them the following agreement:—

> "OFFICE HUNTINGDON AND BROAD TOP MOUNTAIN RAILROAD AND COAL COMPANY, Box 2733.
>
> [Stamp, 5 cents.]                    Philadelphia, April 13th 1867.
>
> Received of Mr. Alfred English, two hundred shares of Pennsylvania Railroad stock, to be returned to him on the fifteenth day of June 1867, and we have deposited with him as collateral security for the same twenty of the consolidated mortgage bonds of this company for $1000 each, Nos. 1094 to 1098, 1256, 1243 to 1247, 1226, 1428 to 1435, inclusive, and do hereby authorize him, upon the non-performance of this promise at maturity, say on the fifteenth day of June 1867, to sell, either at private or public sale, or at the Broker's Board, the above-named bonds at the then market price, without further notice, and apply the proceeds, or as much thereof as may be necessary, to the payment or replacing of the said two hundred shares of stock and all necessary expenses and charges, holding the company responsible for any deficiency or paying the company the overplus, if any.
>
> Signed                    L. T. WATTSON, President."

It appeared, at the trial, by the testimony of the plaintiff, that the defendants at the same time agreed to pay him what he called a "commission," viz., interest at the rate of eight per cent. a year on $10,000 until the stock was returned.

The stock not having been returned at the time designated, a new agreement was made between the parties, on the thirty-first day of October 1867, and embodied in the following document:—

[Huntingdon, &c., Railroad Co. *v.* English.]

" OFFICE OF THE HUNTINGDON AND BROAD TOP MOUNTAIN
RAILROAD AND COAL COMPANY.
Philadelphia, October 31st 1867.

ALFRED ENGLISH, Esq.,

Dear Sir: If you will withdraw the suit for your Pennsylvania Railroad stock loaned us, we will pay the attorney's fee, and we will faithfully agree to pay you, on account of the same, $500 on the 23d November next 1867 ; $1000 21st December 1867 ; $500 on 23d January 1868; $2000 on 21st of March 1868 ; $3000 21st June 1868, and $3000 21st September 1868.   If the amounts of money specified are not sufficient to replace the said two hundred shares Pennsylvania Railroad stock, we do agree to pay to you as much in addition as will be required on the 21st of September 1868, to make the said stock good.   We furthermore agree to pay to you interest on the $10,000, at the rate of eight per cent. per annum, as heretofore.   The securities (the company's bonds) are all to be retained by you until the said stock is returned.   When said stock is returned to you, you are to repay to us the amount of moneys paid to you in accordance with the above, with interest at the rate of eight per cent. per annum.   On the non-fulfilment of this agreement or any portion of it, you are authorized to proceed at once with the suit.   Should the company return you the stock at any time previous to the 21st of September 1868, then any moneys which have been paid to you on account are to be repaid to the company.   If any stock dividends are declared by the Pennsylvania Railroad Company at any time, said stock dividends are to stand in your name, and the certificates of stock are to be delivered to you as soon as received from the company.   The cash dividends that may be declared at any time are to be paid to you in cash at the time the said company pay them.
Yours, truly,

L. T. WATTSON, President.

Attest :
    J. P. AERTSEN, Secretary."

Alfred English accepted.

Under this agreement the defendants paid the plaintiff the instalment of $500 due on the 23d of November 1867 ; that of $1000 due on the 21st of December 1867 ; and on the 23d day of January 1868, the day when the third instalment fell due, they gave the plaintiff their negotiable promissory note for the sum due ($500), paying the interest thereon in advance.   This note was not paid at maturity, and remained unpaid at the trial.

The "interest on the $10,000, at the rate of eight per cent. per annum," provided for in the agreement, was paid up to the 21st of March 1868.

On the 20th of August 1868, the plaintiff gave the defendants

notice that the "consolidation bonds" held by him "as collateral security for the Pennsylvania Railroad stock loaned," would be advertised September 9th, and sold by M. Thomas & Sons, September 14th, if the stock, with interest, was not returned. The bonds were actually sold on the 15th of September 1868, for fifteen per cent. of their par value, the net proceeds of the sale amounting to $2944. A statement of the sale was furnished to the defendants on the 22d day of September 1868, in a note from the plaintiff, which concluded by saying, "for the balance due me according to agreement, I hold your company responsible."

The defendants acknowledged the receipt of the plaintiff's communication; but in so doing, refused to admit the plaintiff's power to sell the bonds without their consent.

On the 3d of April 1873, the plaintiff brought the present suit. The first two counts in his declaration being on the agreement of April 13th 1867, and the next three on the agreement of October 31st 1867.

Neither the money nor the notes received under the second agreement had been returned or tendered to the defendants before the suit was brought, or at any time thereafter.

At the trial, before Hare, P. J., the plaintiff made the following offers of evidence:—

1. To prove the highest market price of Pennsylvania Railroad stock, between the date of default made in the payment of the fourth instalment, under the contract of October 31st 1867, and the date of the bringing of the suit, April 3d 1873.

2. To give evidence of all the dividends, cash and stock, of the Pennsylvania Railroad Company, from the date (March 21st 1868) of default made in the payment of the fourth instalment, due under the contract of October 31st 1867, and the date (April 22d 1871) when the market price of the stock was highest.

3. Evidence of the options offered between the dates last aforesaid to holders of stock of the Pennsylvania Railroad Company to subscribe for new stock at par.

4. Evidence of the cash and stock dividends and options to purchase stock at par, paid and offered by the Pennsylvania Railroad Company between the date when the price of the stock was highest and the date of the offer (November 9th 1875).

All these offers, under objection, were admitted. The following points were presented by the defendants, all of which the court refused.

1st. That the plaintiff's right of action is upon the contract of October 31st 1867, and not upon the contract of April 13th 1867.

2d. That there is no evidence in the case to warrant the jury in finding that the option of rescinding the contract of October 31st 1867, was duly exercised by the plaintiff.

3d. That the omission of the plaintiff to tender back the money

[Huntingdon, &c., Railroad Co. *v.* English.]

paid and the note given by the defendants under the contract of October 31st 1867, and to demand the return of the stock, precludes him from recovering except under the contract of October 31st 1867.

4th. That the measure of the plaintiff's damages is the amount of money which should have been paid him under the contract of October 31st 1867, with interest at the rate of six per cent. from the dates at which the respective payments should have been made.

5th. That the plaintiff is not entitled to recover as damages the highest value of the stock between the time when his right of action accrued and the bringing of his suit, or between the former date and any date subsequent thereto.

6th. That the plaintiff is not entitled to recover under the contract of April 1867, for stock or cash dividends declared on Pennsylvania Railroad Company stock.

7th. That the same instruction applied to a recovery under contract of October 31st 1867.

8th. That if the plaintiff can maintain his action under the contract of April 1867, then the instalments of money subsequently paid by the defendants on account of the plaintiff's claim must be considered as equivalent to a return to the plaintiff of such number of shares as could have been purchased therewith.

9th. That the sale of the collateral bonds was unauthorized, and that, so far as appears from the evidence in this case, the defendants will be entitled to a return of the bonds after the payment of the debt due to the plaintiff, and the defendants are not, therefore, to be credited in this suit with the sum received from the sale of said bonds.

In their general charge the court, inter alia, said:—

" That under the evidence in this case, the measure of damages was either the highest market price of the stock between the date of default made by the defendants in the performance of the agreement of October 31st 1867, and the date of trial, with interest, and all dividends and increments on the stock up to the date of such highest price, or the market value of the stock at the date of trial, with all dividends and increments thereon, from the time that default was made in the performance of the agreement of October 31st 1867; that their verdict should be for the smaller of these amounts, the plaintiff's counsel having consented to this; that the defendants were not to be credited with the amount of stock which the instalments paid by them under the agreement of October 31st 1867, would have purchased if invested at the dates of payment in the purchase of stock; the counsel on both sides agreeing, however, that if a different view of this point should be taken hereafter, the proper reduction should be made."

The jury rendered a verdict for the plaintiff for $14,558.20, that sum being the result of one of the calculations submitted to

[Huntingdon, &c., Railroad Co. v. English.]

them by the plaintiff. The defendants assigned for error the admission of the evidence offered, the refusal of their points and the portion of the charge noted.

*James E. Gowen*, for plaintiffs in error.—The plaintiff's right of recovery should have been restricted to the agreement contained in the letter of October 31st 1867. This was a new contract substituted in the place of the old one, and furnished the rule by which the rights and obligations of the parties were to be determined. The new contract was as to the old an accord and satisfaction: Christie *v.* Craige, 8 Harris 431; 2 Parsons on Contracts *681; Babcock *v.* Hawkins, 23 Vt. 561. Plaintiff had no right to elect to treat the second agreement as rescinded, and recover upon the first. Where a contract is to be rescinded, it must be *in toto*, and the parties placed in *statu quo*. Hunt *v.* Silk, 5 East 449; 2 Parsons *679. And there must be no laches in exercising the right to rescind: Pearsoll *v.* Chapin, 8 Wright 9; Babcock *v.* Case, 11 P. F. Smith 427; Morrow *v.* Rees, 19 Id. 373: Beetem *v.* Burkholder, Id. 249. Here the plaintiff retained the money and the note paid to him under the second contract. The agreement of October 31st expressly provided that the bonds were all to be retained until the stock was returned, and the plaintiff's disposal of them is sustainable only on the ground that the old agreement was rescinded, which was not as we have already contended. The measure of damages was erroneously stated by the court; we contend that the true measure is the value of the stock at the time the contract was broken. The duty or obligation in The Bank of Montgomery *v.* Reese, 2 Casey 143, arose out of the relation of trustee and *cestui que trust*, and not out of a contract relation as here: Wilson *v.* Whitaker, 13 Wright 117; Neiler *v.* Kelley, 19 P. F. Smith 403; McHose *v.* Fulmer, 23 Id. 365. In Musgrave *v.* Beckendorff, 3 P. F. Smith, 310, the contract bound the defendant to return the identical bonds which he had borrowed.

*S. S. Hollingsworth* and *George W. Biddle*, for defendant in error.—Upon a breach by the defendant of the contract of October 31st 1867, the plaintiff was entitled to avail himself of the remedies belonging to him under the contract of April 13th 1867.

In order that an accord may be a defence to the original claim, it must appear that the plaintiff accepted the agreement itself, and not the performance of it, as a satisfaction for his debt, so that, if it was not performed, his only remedy would be by an action for the breach of the accord, and not a right to recur to the original debt: Evans *v.* Powis, 1 Welsby, H. & G. 601.

By the terms of the second agreement, the plaintiff is expressly given the right to recur to his original claim upon the failure of the defendants to fulfil any part of such second agreement.

[Huntingdon, &c., Railroad Co. *v.* English.]

The plaintiff has not rescinded the second contract; he has only enforced those rights which that contract expressly gives him. Nor can there be any question, either, about the sale of the collaterals, because the first contract provided that they might be sold at either public or private sale without notice.

When a suit is brought to recover damages for a breach of contract to return borrowed stock, the plaintiff is entitled to the market price of the stock at the trial, together with all increments and dividends on the stock from time of default, with interest thereon up to trial: Bank of Montgomery *v.* Reese, *supra;* Musgrave *v.* Beckendorff, *supra*; Reitenbaugh *v.* Ludwick, 7 Casey 131; Persch *v.* Quiggle, 7 P. F. Smith 247; Conyngham's Appeal, 7 Id. 474; Work *v.* Bennett, 20 Id. 484. There is no limitation to the rule because of the fluctuating value of a stock or its scarcity.

Mr. Justice GORDON delivered the opinion of the court, March 4th 1878.

We do not regard the acceptance by English, of the proposition made by the president of the company, in his letter of October 31st 1867, as the conclusion of a new contract, but rather the extension of the former arrangement. This previous undertaking contemplated the delivery to the plaintiff, on the 15th of June 1867, of the two hundred shares of Pennsylvania Railroad stock, which the defendant had received as a loan from plaintiff on the 13th of the preceding April. There was no return made of these shares at the date indicated, and English was about to bring suit, when the proposition of the 31st of October was made and accepted.

Taking these two papers as one contract and we observe that it provides, generally, for the return of the stock, or its equivalent in money, on the 21st of September 1868; specially, for payments in cash to be made from time to time, in all amounting to $10,000, the par value of two hundred shares, or if this sum was insufficient to "make good," as the parties termed it, the said shares at the dates specified, the company undertook to pay as much more as would accomplish that object. If, on the other hand, the defendant chose to return the stock, at the time fixed by the contract, the plaintiff was required to refund the money which he had in the meantime received; finally, in case any one of the provisions of this contract was not complied with on the part of the company, English was at liberty to proceed with his suit at law.

Now, as these were independent contracting parties, bound to each other by no ties save those found in their contract, and as they by that contract, had, from the beginning, settled the compensation due English, in case of a failure to return the stock shares at the time fixed, why should we seek for any other rule of compensa-

tion than that fixed by themselves? It is certain, had the company tendered to English the value of the shares in cash on the 21st of September 1868, he would have been obliged to receive it. On the other hand, in the absence of such tender, the plaintiff might have gone, upon that day, into the market and supplied himself with two hundred shares of the Pennsylvania Railroad Company's stock, and have compelled the defendant to account for the price thereof. Thus, we take it, the rights of the parties were definitely fixed at the time when the breach occurred, just as would have been the case had the agreement been for the delivery of two hundred bushels of wheat, or of any other articles of a marketable character.

It is obvious, therefore, that the court below erred in applying the rule stated in the case of The Bank v. Reese, 2 Casey 143, to the controversy in hand, since the contract itself carries it beyond the reach of that rule. Moreover that rule applies only where the parties bear to each other a trust relation. In Wilson v. Whitaker, 13 Wright 114, this court refused to adopt the above stated rule as applicable to stock contracts generally, and the learned judge who delivered the opinion in that case, whilst recognising the case of The Bank v. Reese as binding in all cases involving a trust, said, that the dicta, tending to carry the rule beyond the point stated, were not essential to the case, and were extra-judicial. A similar remark might well be made of the dicta in the case of Musgrave v. Beckendorff, 3 P. F. Smith 310, for there the plaintiff's claim was based on an agreement for a return of the identical bonds loaned, and, as his property in them was not divested by the contract, it was a breach of trust in the defendant to sell or otherwise dispose of them; hence, as the above-stated rule might well apply on principle, the adoption of the extra-judicial dicta of The Bank v. Reese, was not necessary. Persch v. Quiggle, 7 P. F. Smith 247, was the case of an agent who had committed a breach of trust in the disposition to his own use of stock shares intrusted to his keeping. And in Neiler v. Kelley, 19 P. F. Smith 403, and Work v. Bennett, 20 Id. 485, the rule was held not to apply in cases of trover. As yet there does not seem to be any case on our books which prevents the limitation of the rule of The Bank v. Reese to cases involving a trust, or to those, the peculiar character of which renders the application of that rule necessary in order that justice may be meted out to the parties litigant. Such, however, is not the condition of the case in hand. The agreement of the 31st of October required that the plaintiff should be paid by instalments of cash as therein mentioned, and the return of the stock, in kind, was an option belonging to the company. As this contract was in part executed by the payment of the first two instalments by the defendants, and by the retention and sale of the collaterals by the plaintiff, the default cannot be treated as a rescission of the contract, but only as a breach, the damages for which must of necessity be

[Huntingdon, &c., Railroad Co. *v.* English.]

measured by the money due the plaintiff at the time of such breach, with interest to the date of verdict.

It follows that English was entitled to recover from the defendant the value of the two hundred shares of stock, as of the 21st of September 1868, with the dividends and simple interest, deducting therefrom the payments as of the date when severally made.

As we think the collaterals were properly disposed of, we refuse to sustain the 15th assignment of error.

Judgment reversed, and a new venire is awarded.

A rule was granted on the 5th of March 1878, to show cause why judgment should not be entered in this case in favor of the defendant in error for the amount due him, according to the principle stated in the opinion of the 4th of March 1878, the damages to be liquidated by the prothonotary. This rule, after argument, was discharged on the 18th of March 1878.