Finch, J.
This is a motion for a reargument, made long after the entry of judgment on the remittitur and when we have lost jurisdiction of the case; suggesting no point overlooked; citing no new and pertinent authority, but stoutly and vigorously insisting that the court has gone astray, and that its decision is unsound. We are expected to ask for a return of the remittitur and seek in that manner to retrace our steps and correct an error alleged to be dangerous. Ordinarily, no- more than this would need to be said to justify a denial of the motion; but the case itself is both important and peculiar, and the conviction of the unsuccessful counsel is so sincere and profound that we feel willing to venture a new attempt to locate correctly the mistake which one or the other of us has made.
It is insisted that we have violated the rule that one who authorizes and permits a transfer to himself of shares of stock upon the books of a corporation must be held to be a stockholder, whether in truth the real owner or hot, when the rights of corporate creditors are involved, and is equitably estopped from denying the apparent relation. I admit the rule, and have nowhere doubted or denied it, although I am unwilling to agree that it logically rests upon or amounts to an equitable estoppel in a case where no creditor relied upon, or even knew, or could have been deceived by the false appearance. But waiving that criticism for present purposes, and assenting to the rule as presenting a possible case of equitable estoppel, we still say, as was declared in the opinion, that there is no question of estoppel in the controversy. That question is not reached, because before it can be reached there must be shown to exist some act of the party, done by him or with his assent, creating the alleged- apparent relation. That fact must be established before any question of estoppel can arise. If the act done, the false appearance created, is the act, not of the party, but of some third person, such party is in no manner bound or affected by it unless he either originally authorized it or subsequently ratified it. Only by the one process or the other can it become his act, and until he can be held responsible for it there can be no question of estoppel; and there is not a case cited on the original argument or on the brief now presented in.which the rule of estoppel was applied which failed to show that necessary and conscious and voluntary act of the party estopped.
Now what we decided in this case, and all that we decided, was
*731 that there was no such act on the part of the defendants, and how the determination of that effect of the evidence can shake the foundations of the commercial law does not readily suggest itself to our minds. The pith of the controversy lies at this point alone. The defendants did not originally authorize the transfer of the shares to them upon the books of the company. There was no dispute in the evidence about that. The act was done without their antecedent knowledge or authority. They never so intended, their whole course of business was to the contrary, and the very contract which induced the purchase involved an. ownership other than their own. They did direct the purchase of the stock in pursuance of their contract with Ficklin to carry it for him on a margin, and it is now broadly intimated that sucli direction carried with it an implied authority in the vendors or assignors to make a transfer upon the books of the company. There at least is a doctrine upon which commercial interests, if not the commercial law, may look with some degree of terror. The authority for it to which we are referred is Webster v. Upton, 91 U. S., 71. That appears to have been a case of the direct purchase of shares from a stockholder of record by one desiring and intending to become himself the owner. In such a case, where the purchase might be reasonably deemed one for investment, it may be, as the court declared, that there is implied authority in the vendor to make the transfer on the books of the company, but no such implication can attend the dealing of broker with broker. Each knows that the other is merely a middleman or agent for third persons, for that is their customary and constant attitude. The broker buying neither knows nor cares who the real seller will prove to be, and the broker selling neither knows nor cares who is to be the real buyer. Each understands that the other is only the intermediate channel or agency of transfer, and an absolute ownership on either side would seldom be suspected. To say of such a case that the broker selling is authorized by implication to treat the broker buying, not merely in some, but in all respects as the ultimate owner by making a transfer to him on the corporate books, instead of sending certificates assigned in blank, after the customary method, would be to introduce into the broker’s business an element of incalculable danger. It would be ruinous to the stock exchanges and perilous to their dealers. Who would loan money upon "stock collateral or carry stocks for customers upon a margin if the broker-vendor could at once, on a mere order to buy, make the broker vendee a stockholder and load upon him ruinous responsibilities'(
If the latter is so at the mercy of the former there might bo purchases for investment, but none, except at enormous peril, for that vast volume of transactions which proceed without and do not contemplate such transfers. The whole course of the broker’s business, as disclosed by the evidence, forbids the existence of any such implied authority. The defendants, therefore, were put upon the books of the company as shareholders without their knowledge, authority or consent, and contrary to their purpose and intention. The act was not theirs, and could only become theirs by *732 a subsequent ratification, and hence it was that we said before and now repeat that the question involved is not one of estoppel, but solely and only one of ratification.
Proceeding to that inquiry we held that there was no such ratification. We need not here repeat the argument. We did not then and do not now underrate the difficulty which grew out of the imprudent mode of redress which the defendants adopted. Its form furnished ground for some technical reasoning quite plausible and not without elements of strength. We sought to take fairly its full measure and weight. The act done was an act of repudiation. The unauthorized certificates were returned at once to the agent who violated his duty with a refusal to accept the situation. Similar notice was sent to Ficklin. But the defendants knew that the formal legal title had been put in them and could not easily be got out of them without their own formal assignment, and that they attached as a mode of enabling McKim to undo the mistake as they had demanded that he should. It is upon that act and that alone that the whole case of the plaintiff rests. An act intended for a repudiation is claimed to be conclusively one of ratification. We gave the reasons why we thought the substance of the transaction should prevail over its form and the real truth over the false appearance. And that view we think is justified even as against creditors when we take into consideration the real equities of the situation. Ho creditor in the present case has been at' all misled by the w.rongful entry of defendants’ name on the books of the company.
Hot one is shown to have seen that entry or heard of it, to have changed his position in the least degree on account of it, or to have been misled to his injury by it to the value of a.single farthing. Ho servant of the company worked an hour in reliance upon that registry, and no railroad carried a pound of freight more because of it. Every debt contracted would have been contracted had the wrong entry never appeared upon the books. To manufacture an equity out of such material to shut out the truth ■is little short of nonsense. If we can speak of such a situation as constituting an estoppel at all, it must be on the ground of a presumed or constructive reliance by the creditors upon the existence of a body of stockholders generally liable to make up the capital and not upon the presence among them of some particular individual. But if the defendants did not become stockholders their assignors remained such, and some of them have already had to pay, and the real right of the creditors is outside of the" question between the disputants, and is in no sense invaded by a fair and just determination of that question. It is impossible to discover what equity they have to insist that one who did not consent to the entry should be substituted for one who did or to fasten upon the former the liability of the latter. The creditors may indeed justly insist that one who has permitted himself to be registered as a stockholder and taken the benefit of that act shall not be allowed to escape its burdens, for that is the rule which I have steadily admitted and which the- federal court in the case cited puts not upon the ground of an estoppel, *733 but upon the theory that the capital or the liability for it is a trust fund which neither the company nor its members can divert from the security of its creditors; but the latter have no shadow •of an equity to insist that one whose name was put upon the roll without his consent and against his will shall not prove the truth until they show that they trusted to that very false appearance and were misled by it, and that the apparent shareholder was in some manner responsible for it. In this case the creditors have no such equity to prevent the exact truth of the transaction from being proved and having its due effect.
I think we may reach the same result from another direction. In Seymour v. Sturyess, 26 N. Y., 134, we held that the liability of a shareholder to the company for calls made on account of unpaid stock could only be enforced by an action in the nature of ,assumpsit, and necessarily rested upon a promise to pay, express or implied; that such promise must be proved by competent evidence, and equally whether the rights of creditors were involved or not. Indeed it was explicitly declared, which is the point I have been seeking to elucidate, that such creditors claiming through the company have no greater right than belongs to it. Now in this case no express promise to pay the calls was made or is pretended. The plaintiff’s action necessarily rests upon some implied promise. But what is an implied promise ? It is a fiction which the law raises to express the equity of a situation. It is the law’s judgment of what on the facts is just and right between the parties. It is a promise which, though not made, ought to have been made. Where the shareholder consciously accepts that relation he ought to bear its burdens as well as enjoy its benefits, and it is easy to imply a promise to perform that duty. But where he does not accept the relation, where it was put upon him by another without authority and against his will, where instead •of accepting its benefits he repudiated them at serious loss, where his mind and that of the company never met in any contractual relation, where it was not Ins duty to pay and he explicitly refused to take what was offered, all foundation for an implied promise is gone. The facts do not admit of it, for the law does not raise a fiction to accomplish a wrong. And thus again we come to the proposition that the real truth must be ascertained, and when ascertained must control. And that real truth is that the defendants repudiated and did not ratify the unauthorized act of McKim. The whole force of a ratification lies in conscious and intended assent with full knowledge of the facts. If there is no such intent and no such volition, but a contrary intent and an opposite purpose, there is no ratification. The absence of any such intent and the presence of a different one is clearly disclosed by the facts.
Of course, the question discussed is vital to the controversy. Under the law both of this state and of Virginia one may be, as we said in the former opinion, a holder of stock without being in the full sense of the term a stockholder. Our statute of 1848 as to manufacturing corporations, chapter 140, § 16, and that of 1850 as to railroads, recognized that a person may hold shares as *734 collateral without being liable to assessment; and it rests upon the obvious ground that the pledgor in whose name the stock is registered remains the general owner notwithstanding the pledge, and the company cannot treat him otherwise, nor practically claim -that both pledgor and pledgee are at the same time stockholders-of the same stock. The pledgor remains liable; the pledgee never becomes so. The statute of Virginia (Code of 1860, chap. 57, § 25), makes those and only those stockholders “ as it respects the company” whose names are registered on its books as such; and that enactment, thus requiring an acceptance and recognition of the stockholder by the corporation, shows that it is a contract relation which is contemplated and involves an actual assent on both sides. The seeming intimation ventured on behalf of the appellant, that the effect of that act is to make one conclusively a stockholder whose name was registered whether he knew and assented or not, is too plainly unendurable to require serious discussion. No one can be made a stockholder without his consent express or implied. And so there is no view of the subject which can dispense with proof of that assent by the defendants as a vital and necessary element of the plaintiff’s case.
"We'have said that there is no proof of such assent. The appellant’s counsel, however, insist that there is some proof of it, and enough to raise a controverted question of fact upon which the verdict directed by the court is as conclusive upon us as would be the verdict of a jury. That we are quite sure is a mistake. "We discover no such proof. To find any it would be necessary to separate some single fact from its surroundings and pervert the just inference to be drawn from it.
Neither party asked to go to the jury. Both assumed that the material facts were undisputed. The defendants upon them raised a, question of law by a motion for a nonsuit, which was denied and an exception taken. Judgment was suspended and the exceptions ordered to be heard at the general term. The plaintiff was required to go there for his judgment and get it by defeating the exceptions. He made the case himself with that notice and peril before him, and it i's not to be presumed that he omitted anything essential. The judgment of the general term determined that assent to the stockholder’s relation was necessary to be proved but that there was no evidence to prove it, but on the contrary proof of express dissent. In that view we concurred and decided not a question of fact but one of law.
Much more might be said as a commentary upon the plaintiff’s brief, but the cause of action sued-upon is already about a quarter of a century old, and will grow still more venerable if we do not somewhere end the discussion.
The motion should be denied, with costs.
All concur.