## FENNER et al. v. DOBIE.

### No. 7695.

Court of Civil Appeals of Texas. Austin.

March 23, 1932.

Rehearing Denied April 6, 1932.

Smithdeal, Shook, Spence & Bowyer, of Dallas, for plaintiffs in error.

Woodward & Gay and Hart, Patterson, & Hart, all of Austin, for defendant in error.

BLAIR, J.

J. Frank Dobie, hereinafter called appellee, sued Fenner & Beane, a copartnership, and Charles E. Fenner and Earl H. Hulsey, two of the partners, hereinafter called appellants, for $624.80, alleging that $93.55 was profit on certain cotton bought and sold by appellee on the New Orleans Cotton Exchange, through appellants as brokers; that prior to the cotton transactions appellee purchased from appellants a bond of the Consolidated Coal Company, which was deposited with appellants as collateral to the cotton transactions, and which on the date appellee demanded it was of the market value of $491.25; and that $50 represented interest collected by appellants on the bond while it was in their possession as collateral. Appellants answered that in addition to the cotton transactions alleged by appellee, he authorized them to purchase and sell 200 bales of cotton on which he lost $521.22; that if he did not authorize the purchase, he authorized the sale of this cotton after being fully informed of its purchase in his name, thereby ratifying the purchase and sale; and that therefore appellants were not indebted to appellee, and were not obligated to return the bond because appellee's account had not been fully paid. And on the trial to the court without a jury, appellee recovered judgment for $624.80; hence this appeal.

There is no contest of appellee's suit. The controversy relates to appellants' defensive pleas or cross-action that appellee purchased or ratified the purchase and sale of 200 bales of cotton, through appellants as brokers, losing $521.92 on the transactions.

Appellants contend that if the original purchase of the 200 bales of cotton was not expressly authorized by appellee, it was impliedly authorized by his conduct and dealings with appellants' agent Nixon. Appellee testified that he did not authorize the purchase of this cotton. Nixon testified that appellee did authorize the purchase of the cotton by telephone conversation with him. Appellee testified that on September 1, 1929, just prior to his leaving Austin for Beeville, he told Nixon to sell the 100 bales of cotton purchased in August, 1929; but that Nixon insisted that he not sell as cotton was going up, and that he (Nixon) would watch the market and split all profits in this 100 bales of cotton over the then market price of 19.71. Nixon sold the cotton September 3, 1929, for 19.73, but denied specifically that he was to share in the profits, and further testified that he never at any time agreed to share any profits with appellee on his cotton dealings. Nixon was appellants' witness and his truthfulness vouched for by them. They retained him as their employee until January 1, 1930, with full notice of the claim of appellee that he had become personally interested in the 100-bale cotton transaction. Upon this conflicting evidence the trial court decided the issue of whether appellee had expressly or impliedly authorized the purchase of the 200 bales of cotton in favor of appellee, which concludes the matter on appeal.

Appellants further contend that if the original purchase of the 200 bales of cotton was unauthorized by appellee, then he ratified the purchase and sale of this cotton, because he knew on September 4, 1929, that appellants, as brokers, had purchased the cotton for him and in his name, and with full notice of all facts relating to the purchase instructed appellants as brokers to sell this cotton for him on September 8, 1929. In this connection appellants insist that if the conduct of appellee with regard to failure to immediately notify appellants that the purchase of this cotton was unauthorized after learning of its purchase in his name, and by instructing appellants to sell the cotton with full knowledge of its purchase, did not amount to a ratification of the purchase and sale of it as a matter of law, then the judgment in that respect is so contrary to the great weight and preponderance of the evidence as to be palpably wrong. These contentions are not sustained by the record.

This cotton was purchased in the name of appellee, by appellants as cotton brokers, on September 4, 1929. On the same date appellee was advised by telephone conversation with Nixon of the purchase, and appellee then told Nixon that the purchase was unauthorized. Nixon insisted that appellee keep the cotton as the price would go up in his judgment, and assured appellee that he would straighten the matter out when appellee returned to Austin, and asked appellee when he expected to return to Austin. Appellee told him by the end of the week. On

Saturday, September 7, 1929, appellee again repudiated the purchase to Nixon, and tried to see Ellis, the manager of appellants' office at Austin, but was unable to do so. On Monday, September 9, 1929, appellee again repudiated the purchase to both Nixon and Ellis. At this time Ellis told appellee that the government report was due in a few minutes, and that appellee would have to put up more margin to carry the purchase over the report. So far as the record shows, this was the first time appellee was informed or knew that he would have to put up a margin to carry the purchase over the government report, due in a few minutes. Nixon was insisting that appellee had authorized the purchase of the cotton by telephone conversation with him. In view of this dilemma the parties agreed that appellee should sell the cotton, and that they would settle their differences later. The uncontroverted evidence shows that they later tried to settle their differences, appellee reducing to writing his contentions in the premises, and delivered or mailed same to Ellis on September 11, 1929.

Manifestly this evidence would authorize a finding and conclusion of the trial judge that appellee immediately repudiated the purchase of the cotton in his name as being unauthorized, and that any delay in selling same thereafter was due to the efforts of Nixon to induce appellee to accept the unauthorized purchase.

It is also manifest from this evidence that the trial judge was authorized to find and conclude that appellee did not by any act prior to September 9, 1929, or on that date, ratify or confirm the purchase of this cotton, and did not, under his agreement to sell the cotton and settle their differences later, ratify or confirm the purchase and sale of it. The parties themselves did not consider that appellee had ratified the purchase of the cotton on September 9, 1929, because on that date the sole dispute between the parties was whether appellee had authorized the purchase of the cotton by telephone conversation with Nixon, appellee denying the purchase and Nixon affirming the purchase. With this dispute confronting them the parties agreed that the cotton might be sold in order that appellee would not be compelled to put up a margin to carry it over the government report, due in a few minutes; and that the parties would later settle their differences as to whether appellee authorized the purchase of the cotton. The parties knew all the facts when this agreement was made. They later tried to settle their difference in accordance with the agreement, but were unable to do so, and this suit resulted.

Mechem on Agency (2d) § 492, states the rule of law applicable here, as follows: " * * * The principal may, in reasonable endeavors to extricate himself from the dilemma in which the agent's unauthorized act has placed him, and to save himself and all parties from unnecessary loss, have done acts which, as to third persons, might be construed as ratifications, but which it would be very unjust to construe as an approval of the act so far as the agent himself is concerned."

In Glenn v. Garth, 133 N. Y. 18, 30 N. E. 649, 651, 31 N. E. 344, where the principal ordered certain stock from the broker for the purpose of holding it on margin for one of the principal's customers, the stock should have been assigned in blank, but the broker had the stock transferred on the books of the company to the principal. The principal intending to disaffirm the transaction, returned the stock to the broker and ordered that he sell same, which was done; but the stock was not transferred on the books of the company. No interest of third parties became involved, but it was claimed that the transfer of the stock to the principal and the principal's order to the broker to sell same constituted ratification so as to make the principal liable for assessments on the stock of the company, which failed shortly thereafter. But it was held as follows: "As between the original parties, that could not be deemed a ratification which was accompanied by a refusal to ratify, and a declared purpose to undo the unauthorized act. The form adopted, by itself and unexplained, would tend to an inference of ratification, but it is not left unexplained. The actual truth is established, and that truth must prevail over the form adopted, as between parties who have not been misled to their harm by the form of the transaction, as distinguished from its substance."

In the instant case the parties knew and agreed at the time of the sale of the cotton that appellee did not intend to authorize the transaction by ordering the cotton sold, but they agreed to use that means of getting out of the dilemma confronting them, thereby eliminating any rights of third parties, and agreeing that they would later settle their own differences, and as between appellee and appellants the order to sell the cotton did not amount to a ratification of the purchase and sale of it as a matter of law; and the facts detailed would authorize the finding that appellee did not intend to ratify the unauthorized purchase by ordering the sale of the cotton. Strickel v. Brownfield State Bank (Tex. Civ. App.) 250 S. W. 258; Doujotos v. Leventhal, 271 Mass. 280, 171 N. E. 445, 69 A. L. R. 1080.

Appellants make the further contention that appellee ratified the purchase and sale of the 200 bales of cotton, because on September 9, 1929, after the government report was in, appellee purchased, through appellants as brokers, 50 bales of cotton. This

cotton was later sold at a loss and appellee accounted for that loss in this suit against appellants. The transaction was after the parties had amicably agreed upon the manner of settling their differences as to the purchase and sale of the 200 bales. The transaction had no connection with the 200-bale transaction, and the subsequent purchase of the 50 bales of cotton did not amount to a ratification of the former purchase and sale of the 200 bales as a matter of law; and the trial judge was clearly justified in finding that appellee did not intend to ratify the former unauthorized transaction merely by entering into this later transaction. Gervis v. Kay, 294 Pa. 518, 144 A. 529, 63 A. L. R. 297.

The judgment of the trial court is affirmed. Affirmed.