Opinion bt
Head, J.,
The plaintiffs were the owners of a single warehouse building, the value of which, according to the testimony, undisputed in this respect, approximated $3,000. The defendant is a foreign insurance company, duly authorized to do business in the state of Pennsylvania, and for many years had maintained a general agent in the city of Philadelphia. He had general charge of the business of the company in this state and exercised supervisory control over the work of the local and soliciting agents. The plaintiffs took out a policy of insurance on the said building in the sum of $500. During the life of the policy the building was totally destroyed by fire, and it appears to have been generally understood, both by the insured and the representatives of the company, that the fire was caused by sparks from a locomotive operating on a railroad located close to the insured building. Notice of the fire and the resulting total loss of the insured building was at once *477 given, to the local agent of the defendant company. He in turn notified the general agent at Philadelphia, and within a few days thereafter the latter in person visited the scene of the fire and made such physical examination of the premises as was then practicable. At that interview full information as to the size and character of the building and the origin of the fire were given by the assured to the general agent. At the conclusion of their interview the plaintiff testifies he inquired of the general agent what further he was to do, and the latter replied, “You ¿ave nothing further to do. We will give it the necessary attention. I will see Mr. Richwine (the local agent) and we will let you know.” Without indicating any denial of liability on any ground whatever, the defendant company sought to have the plaintiffs look to the railroad company for compensation for the loss on the theory that the negligence of that company was the primary cause of the loss. A long correspondence followed between the general agent, a special agent in Philadelphia in whose hands the matter was afterwards placed, and the local agent, and through the latter the plaintiffs were kept informed as to the wishes of the defendant. The plaintiffs appear to have been disinclined to go into litigation with the railroad company, and naturally urged that such proceeding, with its consequent annoyance and expense, should be begun by the defendant company.
The settlement of the loss was thus kept in suspense for something over a year following the fire when the plaintiffs brought this suit to compel the payment of the indemnity secured to them by their policy. On the trial they of course easily made out a prima facie case. The defense set up was that no proofs of loss had been furnished within the time required by the policy and that the suit, having been begun more than a year after the fire, the plaintiffs, under the usual covenant in their policy, could not then maintain' such action. The two covenants of the policy fixing the time within which proofs of loss must be made and within whicli suit must be brought are *478 clear and distinct. If the defendant company had neither waived the benefit of these covenants nor estopped itself from setting up the defense they afforded, clearly the plaintiffs had lost their remedy. In answer to this defense the plaintiffs, in rebuttal, offered in evidence a series of acts and a line of conduct on the part of the company’s representatives which, they urged, tended strongly to show that the company did not intend to avail itself of any such defense, 'and that, for its benefit and at the instance of its agents, the plaintiffs had stayed their hands and refrained from doing the things which would otherwise have been necessary to enforce the liability of the defendant under its policy.
That the covenants of the policy referred to were for the benefit of the defendant company is clear; that thé latter might therefore waive them has long since beén established; or, if by a series of acts the insured were reasonably misled into the belief- that a strict compliance with those covenants would not be required, the company would thereafter be estopped from asserting a forfeiture of the policy by reason of the failure of the plaintiffs to file their proofs or bring their suit within the time required by the letter of the policy. And such waiver may be accomplished or such estoppel worked not only by an instrument in writing but by matter in pais. In such cases there usually arises a mixed question of law and fact to be submitted to a jury under proper instructions from the court.
In the opinion of the learned judge below, overruling the motion of the defendant for a new trial' and refusing to enter judgment non obstante veredicto, the testimony is carefully collated and analyzed. That it was sufficient, if believed by the jury, to support the conclusion that both of the legal defenses set up by the defendant had failed, we think the opinion demonstrates, and in this respect may well speak for itself.
But conceding, for the sake of argument merely, that there was a case for submission to the jury, it is urged *479 upon us that the learned trial judge fell into error (sixth assignment) in thus charging the jury: “ You have letters offered in evidence which indicate that even long after the twelve months had expired negotiations were going on in reference to a settlement and an offer of compromise made a very considerable length of time after the year had expired, and we say, as a matter of law, that you can take that into consideration in determining whether the contention of Mr. Eberly is not the true one, to wit, that he was led not to file his proofs and not to bring suit because he hoped for an adjustment and because Mr. Richwine, as agent of the company, seemed to be very insistent that no suit should be brought and no difficulty should arise between Mr. Eberly and the insurance company.”
Ordinarily the wishes of the local agent in such matters ought not to affect the actions of the insured because the latter would have no right to assume that a mere local agent had any authority to deal with such matters. But in the present case there was evidence to show that the local agent was constantly in touch with the representatives of the company and that every step taken by him looking to an amicable adjustment of this loss was with their knowledge, and in nearly every instance their affirmative approval. It is true, generally speaking, that a mere offer of compromise has no probative value to establish any liability on the part of the person making it. But the evidence of a willingness to compromise was not offered in this case for the purpose of establishing the liability of the defendant. That liability resulted from the execution and delivery of the policy, the happening of the fire and the consequent destruction of the insured property. The real issue between the parties was to be determined by ascertaining whether or not the defendant company was in a position to assert a forfeiture of the policy and a consequent destruction of the liability that would otherwise have flowed from the facts already stated. To determine that question it was proper for the jury to consider all of the acts of the defendant company and its *480 officers and representatives following the fire. The willingness of the company to compromise, if such willingness were manifested by the evidence, was but one of an entire series of acts calculated to mislead the plaintiffs into the belief that the company occupied no adversary attitude towards them and that the loss would be paid without suit. Under such circumstances we cannot say that an offer to compromise or an expression of willingness to compromise would not have some probative value, and we can see no sound reason why it should not be considered by the jury along with all of the other evidence in the case pointing to the conclusion that the defendant ought not to be heard in a defense which its whole course of conduct had led the plaintiffs to believe would not be interposed. It would not be accurate to say that Lycoming Ins. Co. v. Schreffler, 42 Pa. 188, State Ins. Co. v. Todd, 83 Pa. 272, and Weiss v. Ins. Co., 148 Pa. 349, have so clearly ruled the precise question before us as to put it beyond controversy. But it cannot be doubted that the deductions to be fairly drawn from the reasoning of the opinions in those cases strongly tend to support the conclusion here reached.
There was, it is true, some maneuvering on the part of the company’s agents to induce the plaintiffs to make the offer to accept a less sum rather than have the offer to pay come from the company. But as we view it, the jury would have been warranted in interpreting the defendant’s letters on this subject as indicative of a willingness on its part to pay something less than the full amount of the claim. Such willingness was a circumstance along with others to be considered by the jury in determining, under the instructions of the court, whether the defendant was not estopped from now insisting upon a strict compliance with the covenants in the policy on which their defense rested. Thus considered, we are unable to say that the instructions of the learned trial judge, complained of in the sixth assignment, exhibited any reversible error. The assignments of error are therefore overruled.
Judgment affirmed.