Collins *v.* The Home Ins. Co. of N. Y., Appellant.

Argued May 3, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Frank J. Thomas,* and with him *Paul E. Thomas* of *Thomas & Thomas,* for appellant, cited: Waynesboro Mut. Fire Ins. Co. v. Conover, 98 Pa. 384; Kompa v. Franklin Fire Ins. Co., 28 Pa. Superior Ct. 425.

*Arden D. Mook,* and with him *John I. Kent* of *Kent & Mook,* for appellee, cited: Isaac v. Donegal & Conoy Mutual Fire Ins. Co., 308 Pa. 439; Philadelphia Auto Ins. Co. Inc. v. The Agricultural Ins. Co., 102 Pa. Superior Ct. 1.

OPINION BY PARKER, J., July 14, 1933:

The policy of fire insurance which formed the basis of this suit contained provisions that "no suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the claimant shall show compliance with all the requirements of this policy, nor unless commenced within twelve months next after the fire," and that "no one shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement added thereto; nor shall any such provision or condition be held to be waived unless such waiver shall be in writing added hereto; nor shall any provision or condition of this policy, or any forfeiture, be held to be waived by any requirement, act, or proceeding, on the part of this company relating to appraisal or to any examination herein provided for."

The property insured was totally destroyed by fire which occurred on August 5, 1926. Suit was not commenced on the policy until April 22, 1932, more than five years and eight months after the fire. The insured claimed that the provision requiring the suit to be commenced within twelve months after the fire was waived, and the trial court submitted to the jury for its determination the question whether there had been such a waiver. There was a verdict for the plaintiff for the full amount of his claim and a refusal by the lower court of defendant's motion for judgment n. o. v., whereupon this appeal was taken. Was there sufficient evidence to submit to the jury on the question of waiver?

The policy limited the time within which action might be brought to twelve months after the fire. The period is not unreasonable, and it is lawful for the parties so to contract: Hocking v. Howard Ins. Co., 130 Pa. 170, 18 A. 614; Watters v. Fisher, 291 Pa. 311,

139 A. 842; Wernick v. Pittsburgh Underwriters Agency, 90 Pa. Superior Ct. 186; Abolin v. Farmers Amer. M. F. I. Co., 100 Pa. Superior Ct. 433. This provision being for the benefit of the insurance company may be waived by it: Fritz v. British America Assur. Co., 208 Pa. 268, 57 A. 573; Flynn v. Ins. Co., 4 Pa. Superior Ct. 137; Abolin v. Farmers Amer. M. F. I. Co., supra. "To constitute a waiver there should be shown some official act or declaration by the company during the currency of the time, dispensing with it; something from which the assured might reasonably infer that the underwriters did not mean to insist upon it": Beatty v. Ins. Co., 66 Pa. 9, 17; Flynn v. Ins. Co., supra. "Furthermore, a parol waiver is valid even where, as here, the applicant agrees 'that no statements made nor information furnished shall be binding upon the company unless written herein [in the policy]' ": Evans v. Metropolitan L. I. Co., 294 Pa. 406, 410, 144 A. 294; Witmer v. Royal Ins. Co., Ltd., 68 Pa. Superior Ct. 12. Such waiver may be inferred from the acts of the insurer or its authorized representatives: Fedas v. Ins. Co., 300 Pa. 555, 151 A. 285.

To establish a waiver the plaintiff depends primarily upon statements of members of the partnership of Lawrence & Sterling, local agents for the defendant company, who placed the insurance, but claims indirect support from statements alleged to have been made by R. J. Smith, an adjuster. We are unable to find anything in the evidence in the way of statements or conduct of the adjuster which indicates a waiver of the time within which this suit should have been brought. After the fire, the insured notified the local agents of the loss and they, in turn, advised the defendant company of that fact. The defendant then referred the adjustment of the loss to the General Adjustment Bureau, and that bureau sent its represen-

tative, R. J. Smith, to Conneautville where he met the plaintiff. Before proceeding to consider the loss, the adjuster required plaintiff, on August 19, 1926, to sign the following waiver: "It is hereby mutually understood and agreed, by and between Herbert Collins, of Linesville, R. D., hereinafter called the claimant, and the insurance companies, whose names are signed hereto, hereinafter called the companies. That any action taken by the companies, or their representatives, in investigating the claim made by claimant for loss which occurred at Conneautville, Pa., on August 4, 1926, or in the investigation or ascertainment of the amount of value and loss or damage, shall not waive or invalidate any condition of the policies of such companies held by said claimant, nor the rights of either or any of the parties to this agreement; and such action shall not be, or be claimed to be, any admission of liability on the part of said companies, or any of them. The consideration of and for this agreement is the mutual desire and intention of the parties hereto, to determine the value of the property and/or the amount of damage thereto without regard to any other questions."

The plaintiff testified that he had a conversation with the adjuster with reference to the cause of the fire; that they looked over the ground; that the adjuster presented the waiver to him for signature and before signing it there was the following conversation: "Q. What did he say about it after you did sign it? A. It would be taken care of. Q. When? A. Soon. Q. What would be taken care of? A. The loss. Q. When he viewed the fire, state if he said anything in relation to it? A. Nothing only he said it was a total loss. Q. Did you hear anything from Mr. Smith, the adjuster? A. Not after he went away that day. Q. State if he asked you to do anything further? A. No, he said I did not have to do anything further. It would

be taken care of." As a matter of fact, nothing was done until July, 1927, when the plaintiff interviewed the local agent, to which meeting we will refer later. It will be observed that the plaintiff agreed with the defendant in writing that the action of Smith, the adjuster, in investigating the loss should not waive or invalidate any condition of the policy and that the sole consideration for the agreement was the desire of the parties to determine the value of the property and the amount of damage thereto "without regard to any other questions." This very explicitly advised the plaintiff that the sole undertaking of the adjuster was to ascertain the amount of the loss. The only reasonable inference from the alleged statement of Smith that the plaintiff did not have to do anything further, is that he did not have to do anything further with relation to the filing of proofs of loss. This is a fair construction for it is conceded that there was a total loss and the loss exceeded the insurance, and although plaintiff failed to file any written proofs of loss, the company is not seeking to take advantage of such failure. There is not any ambiguity in the language alleged to have been used by the adjuster or in the stipulation signed, and from these no reasonable inference can be drawn that the company waived the requirement that suit should be brought within a certain time after the fire.

The plaintiff apparently agrees with our conclusions thus far stated, for in the printed brief he says: "We humbly submit that the only issue in this appeal is whether or not the testimony of the plaintiff as to declarations and acts of the agent who countersigned and issued the policy are sufficient in law to justify the court in submitting to the jury the question of the waiver of or the estoppel to set up the provision in the policy as to when suit must be brought thereon." We agree with this statement. If the limitation as to

the time of bringing suit was waived, it must have been by virtue of something that was said or done by Lawrence & Sterling, the local agents.

It is necessary to state the pertinent evidence introduced on this subject. Lawrence & Sterling wrote the insurance and countersigned the policy; they were notified by plaintiff of the loss and then advised the company. The defendant, recognizing this notice, referred the matter to the General Adjustment Bureau, and an agent of that bureau met plaintiff and investigated the loss. Collins, after testifying with relation to his conversations with the adjuster in August, 1926, said in substance: ''Well, it [consideration of the claim by plaintiff and defendant] ran along; kept hanging fire until about in July, 1927. Why I goes to Mr. Lawrence and tells him—the time, the year is pretty near up, there has got to be something done now soon. He says: 'I will take it up with my company.' Well, it was probably a week [when I next saw him], a few days back, I went in and asked him what report he had. He read me a letter from Mr. Brown. He read the letter to me, stating he had the letter from Mr. Brown, 'to tell Mr. Collins not to worry over this, it will be taken care of, soon, this loss.' I told Mr. Lawrence: There's got to be something done before the year, or I would start a suit. [In answer to this] he read me that letter from Mr. Brown and stated that for me not to worry, they would take care of the loss. They led me to believe there was no use going any further, starting anything. I took it to their honesty they would go on with it. Q. Specifically about starting suit, was there anything said at that time? A. Nothing, only he spoke up, he said no use going to any expense.'' Mr. Lawrence, of the firm of Lawrence & Sterling, testified that all the correspondence he had with reference to this claim was destroyed by him about August, 1929, but he was not interrogated by

either party as to the receipt of this letter from Brown nor as to the contents of the alleged letter.

Counsel for plaintiff again very candidly admit that plaintiff depends for proof of a waiver not upon the letter from Brown, but upon the declarations of the agent who wrote the insurance. The contents of the letter from Brown were not properly proved, for there was no pretense at stating all the letter contained (Dennis v. Barber, 6 S. & R. 420, 425), and the proof was hearsay (Coxe v. England, 65 Pa. 212, 222). Defendant excepted to the receipt of evidence as to the contents of the letter. "To authorize memoriter proof of a lost document or record, the witness must have read it, or otherwise have actual knowledge of it, and be able to speak at least to the substance of the contents": Richards' Appeal, 122 Pa. 547, 556, 15 A. 903. The mere fact that Lawrence communicated with Brown before making any statement to plaintiff probably did have some relevancy: Gough v. Halperin, 306 Pa. 230, 234, 159 A. 447, but only in connection with the statements of Lawrence. We are, therefore, limited for proofs, as is admitted by counsel for plaintiff, to such statements as were made by the local agent.

We are unable to agree with the primary contention of counsel for the plaintiff and the lower court that there was sufficient evidence to submit to the jury as to whether the company waived the provision of the policy that suit should be started within twelve months after the fire, for plaintiff was required to show not only that the local agent did waive the benefit of this limitation in the policy, but that he had authority so to do. As was held in Beatty v. Ins. Co., supra, and Flynn v. Ins. Co., supra, there must, to constitute a waiver, be shown some *official* act or declaration of the company. There is not any presumption that local agents, such as Lawrence and Sterling, had authority

to waive such a provision as we have under consideration. In Eberly v. Ins. Co., 51 Pa. Superior Ct. 474, 479, we said: "Ordinarily the wishes of the local agent in such matters ought not to affect the actions of the insured because the latter would have no right to assume that a mere local agent had any authority to deal with such matters." The making of such a waiver was not within the apparent scope of the duties of a local agent who was authorized to issue and countersign policies of insurance, and there was not a scintilla of evidence as to any course of conduct by the local agents, Lawrence & Sterling, from which such authority could be inferred. On the contrary, when the insured advised Lawrence that the time when he could bring his suit would expire shortly and that he would start it unless the matter was fixed up, Lawrence stated that it would be necessary for him to write to the company. This was a clear indication to the insured that the local agent did not have authority to bind his company with respect to the waiver.

The question here involved is ruled by the case of Waynesboro Mutual Fire Ins. Co. v. Conover, 98 Pa. 384, and Flynn v. Ins. Co., supra. There is a striking similarity between the facts in the instant case and those in the Waynesboro case. There the policy required that suit be brought within six months and contained a provision that the company should not, in any case, be deemed to have waived a strict compliance with every term in the policy "unless such waiver be express and manifested in writing under the signature of the president and secretary of said company." Here the time for bringing suit was twelve months, and it was required that any waiver of the terms of the policy should be in writing and added to the policy. There a general agent for the company was alleged to have advised the insured before the six months had expired and on being informed of the intention of the

insured to bring suit, that it was not necessary to sue, that the company was somewhat embarrassed but had made, or was about to make, an assessment and the loss would be paid without suit. This statement was made by a general agent and was much stronger than the statement alleged to have been made in the instant case. In the Waynesboro case, as here, the lower court submitted the question of waiver to the jury. There was a verdict for the insured, and the Supreme Court reversed upon the ground that there was nothing to show authority upon the part of the agent to waive the express conditions in the policy. That case was followed by this court in Flynn v. Ins. Co., supra.

The point at which the lower court and counsel for the plaintiff fell into error was in not noticing the distinction that while an agent may by parol waive a provision in the policy, he could not make such waiver without authority so to do, which authority might be shown by proving either that the act was within the scope of his duties as a local agent, or by showing such a course of conduct as would make him an agent for such purpose. Mr. Justice CLARK, in the case of Imperial F. Ins. Co. v. Dunham, 117 Pa. 460, 473, 12 A. 668, when referring to the Waynesboro case, and in distinguishing it from the case he was then considering, said: "That an agent may not waive the provisions of a policy, *in a matter outside the scope of his agency,* cannot be doubted." (Italics ours.) The distinction is further emphasized by a consideration of the late case of Gough v. Halperin, supra, relied upon by plaintiff. There the court pointed out acts of the agent which were sufficient to raise a question for the jury as to the authority of the agent. Here no facts were shown from which the authority of the agent to act for the company could be inferred.

There is an additional reason why the judgment of the lower court cannot be sustained. Assuming, for

the sake of argument only, that the statement of Lawrence was the official act of the defendant and that it was sufficient to amount to a waiver or estoppel, such waiver or estoppel was only effective during such time as the plaintiff was led by reason of such statements to postpone his action. In the case of Fritz v. Assur. Co., 208 Pa. 268, 57 A. 573, the Supreme Court had occasion to consider a provision in an insurance policy fixing a time within which suit should be brought, and where a waiver was claimed by the insured. In that case it was held that the running of the time for bringing suit was stopped by the insured and insurer entering into an agreement for an appraisement, but the court said (p. 275): "When the appraisement has been terminated either by an award or an abandonment without fault of the parties, the time within which an action may be brought begins to run." Also, see Gilbert v. Globe & R. F. Ins. Co., 175 Pac. 1161. More than eleven months elapsed between the time of the fire and the alleged conversation with Lawrence, and more than four years and eight months additional passed before the action was begun, and there was not any evidence that during this later time anything was said or done with reference to the loss, or that there was any contact between the parties, except an averment by plaintiff in his statement of claim that defendant refused to pay the claim. We may paraphrase the language alleged to have been used by Lawrence thus: "This loss will be taken care of soon. There is no use starting anything or going to any expense." It is plain that the word "soon" meant in a reasonable time. When such period elapsed, the period for bringing suit again began to run. Approaching, from any angle, the question as to the period during which the running of the time fixed by the contract for beginning suit was suspended, four years and some months was far more than a

reasonable time, and we so find as a matter of law. "Where the facts are in dispute, the inferences uncertain, or the evidence of a character which must be passed upon by a jury, it is the duty of the court, in submitting the issues, to instruct the jurors as to what would be a reasonable time under the facts as they may find them: Vilsack v. Wilson, 269 Pa. 77, 80. This is in accord with the general principle that, ordinarily, reasonableness of time is a matter of law": Gervis v. Kay, 294 Pa. 518, 533, 144 A. 529. We are here assuming the facts to be as contended for by the plaintiff. We are of the opinion that there was not any question of fact to be submitted to the jury.

The judgment of the court below is reversed and here entered for the defendant.