**ACF PRODUCE, INC.**

v.

**CHUBB/PACIFIC INDEMNITY GROUP and Chubb & Son, Inc. and Federal Insurance Company and Fireman's Fund Insurance Company and W. S. Borden, Jr., t/a W. S. Borden Company and Edward Seeger.**

Civ. A. No. 76–910.

United States District Court,
E. D. Pennsylvania.

March 28, 1978.

Alan D. Williams, Jr., Doylestown, Pa., for plaintiff.

Robert R. Reeder, Philadelphia, Pa., for Chubb/Pacific Indemnity Group and Chubb & Son, Inc. & Fed. Ins. Co.

Albert L. Bricklin, Philadelphia, Pa., for W. S. Borden & Edw. Seeger.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Plaintiff ACF Produce, Inc. (ACF) instituted this suit on December 10, 1975 against two insurance companies, an insurance broker and the broker's employee. The action is predicated upon an inland commercial marine policy, issued by Federal Insurance Co. (Federal), and an excess policy, issued by Fireman's Fund Insurance Co. (Fireman's).[1] Both Federal and Fireman's have filed motions for summary judgment asserting that plaintiff's claims are barred by

several notice provisions and exclusions in their respective policies. Since we agree with defendants' contentions on only one front, we will grant partial summary judgment.

Plaintiff ACF is a small, fresh and frozen food wholesaler. Plaintiff has no single physical structure which might be characterized as a warehouse since most of its product is transferred directly from delivery trucks onto ACF's trucks for distribution. ACF's limited storage facilities consist of seven 40-foot trailers located permanently on plaintiff's premises. To protect the contents of these trailers, plaintiff purchased policies of insurance from defendants through Mr. Seeger, an employee of W. S. Borden Co. All of plaintiff's contacts with defendants were through Seeger upon whom plaintiff allegedly relied in obtaining full and complete insurance covering all contingencies.

In Count I of the complaint, plaintiff seeks to recover for meat stolen from the plaintiff's trailers between October 3, 1973 and June 30, 1974. Count III alleges a cause of action based upon defendants' failure to exercise good faith in settling the claim asserted in Count I. Finally, in Count II, plaintiff alleges that Federal failed to promptly settle a claim for losses arising out of a theft on or about September 5, 1974.

With respect to the claims advanced in Counts I and III, there is no question that the policies were in effect on the dates in question. The sole issues, therefore, relate to the scope of coverage afforded by the policies and plaintiff's failure to comply with certain notice provisions.

### PROOF OF LOSS AND LIMITATION OF SUIT PROVISIONS

Both defendants contend that they are entitled to summary judgment on Counts I and III because of plaintiff's failure to comply with proof of loss and limitation of suit clauses in their respective policies.

1. Federal is a member of the Chubb/Pacific Indemnity Group and the insurance policy issued by Federal was managed by Chubb & Son, Inc. Both Chubb/Pacific Indemnity Group and Chubb & Son, Inc. have joined in Federal's motion.

Both insurance contracts required that a sworn proof of loss be filed within 90 days of the discovery of the loss. Plaintiff concedes that the sworn proof of loss was not filed until August 15, 1975, approximately thirteen and one-half months after the last loss sought to be recovered in Count I. Both policies also required that any suit on the policy be filed within 12 months of the discovery of the loss. Plaintiff did not commence this suit until December 10, 1975, more than sixteen months following the loss alleged in Count I.

The correctness of these dates is not in dispute. Therefore, unless the plaintiff is excused from complying strictly with the policy provisions, it may be barred from recovery. Plaintiff contends that neither the proof of loss nor the limitation of suit clauses may be invoked because: 1. the defendants have suffered no prejudice from the delay or 2. defendants, through their authorized agent, have waived any right to rely upon plaintiff's failure to comply with these clauses.

■ First, plaintiff's lack of prejudice theory is based upon the recent Pennsylvania Supreme Court case of *Brakeman v. Potomac Insurance Co.*, 472 Pa. 66, 371 A.2d 193 (1977). In *Brakeman*, the policy contained a clause requiring the insured to give the insurer written notice of an accident "as soon as practicable." *Id.* 371 A.2d at 195. In accordance with prior Pennsylvania decisions, the insurer attempted to invoke this clause to bar the insured's recovery. The court, however, rejected its traditional contractual approach and joined the growing number of courts which "require the insurance company to prove not only that the notice provision was breached, but also that it suffered prejudice as a consequence." *Id.* at 195–96.

To support its departure from precedent, the court cited a number of reasons. First, the court noted that insurance contracts are no longer negotiated agreements entered into following meaningful bargaining between the parties. Thus, the notice provision was not included in the policy by choice. Second, the court recognized that

where the penalty suffered by the insured or accident victim is forfeiture, good reasons must exist to permit the insurer to escape its undertaking. Since the notice provision was designed to preserve the insurer's ability to defend the claim effectively, the court found that no good reason existed to allow the insurer to escape its liability where it could show no prejudice flowing from the lack of timely notice. The court concluded that "[a]llowing an insurance company, which has collected full premiums for coverage, to refuse compensation to an accident victim or insured on the ground of late notice, where it is not shown that timely notice would have put the company in a more favorable position, is unduly severe and inequitable." *Id.* at 198.

The *Brakeman* court's conclusion does not necessarily end our inquiry since in that case the court was confronted with a notice provision whereas in our case the insurers seek to invoke "sworn proof of loss" and "limitation of suit" clauses. This inquiry need not detain us long since we believe that the *Brakeman* court's analysis may be applied to both of these clauses.

First, the Superior Court of Pennsylvania has already applied the *Brakeman* rationale to a limitation of suit clause. *See Diamon v. Penn Mutual Fire Insurance Co.*, 247 Pa.Super. 534, 372 A.2d 1218, 1224–25 (1977). Accordingly, neither insurer may avail itself of the limitation of suit clause absent a showing of prejudice.

Second, while we have been unable to find any Pennsylvania decision requiring an insurer to show prejudice before applying a proof of loss clause, we believe that the *Brakeman* and *Diamon* decisions clearly portend the extension of the prejudice requirement to proof of loss clauses. Other courts which have embraced the prejudice requirement in notice clauses have applied the same requirement to proof of loss clauses. *See Maryland Cas. Co. v. Clements*, 15 Ariz.App. 216, 487 P.2d 437 (1971); *Schultz v. Queen Ins. Co.*, 399 S.W.2d 230 (Mo.App. 1965). Also the similarity in purposes underlying the notice and proof of loss clauses support the extension of *Brakeman* to the

latter. Both clauses are designed to permit the insurer an opportunity to investigate the nature and extent of the claim against it. Indeed, "[l]ate filing of a notice claim is not . . . 'wholly analogous' to late filing of proof of loss, as prejudice is more likely to result to an insurer which has no notice at all of a claim." *Morningstar v. INA*, 295 F.Supp. 1342, 1346 (S.D.N.Y.1969).

We conclude that Pennsylvania law, as developed in *Brakeman*, requires an insurer to show prejudice before it can compel forfeiture by invoking a proof of loss or limitation of suit clause. Neither insurer has made such a showing here.

Plaintiff also argues that even if the insurers did suffer prejudice from the lack of timely notice or failure to comply with the suit limitation clause, the conduct of their authorized agent waived their right to raise those defenses. In support of its position, plaintiff points to the deposition of Angelo C. Ferri, president of ACF, who stated that Mr. Seeger had told him that he need not "worry about a time limit, when the investigation was through and the arrests made, then it would all be handled at that time." (Ferri Deposition at 34).

█ It is clear that an insurance company may waive the protections afforded it by the proof of loss and limitation of suit clauses. *See Collins v. Home Insurance Co.*, 110 Pa.Super. 72, 167 A. 621 (1933) (limitation of suit); *Philadelphia Auto Finance Co. v. Agricultural Insurance Co.*, 102 Pa.Super. 1, 156 A. 625 (1931) (proof of loss). To establish a waiver of such a policy term, "there must be some official act or declaration of the company during the time within which notice is required to be furnished, from which the insured may reasonably infer that the insurer does not mean to insist upon the terms of the policy." 19 *Pennsylvania Law Encyclopedia* at 247 (1959). The existence of such a waiver is a question of fact for jury determination. *Philadelphia Auto Finance Co. v. Agricultural Insurance Co., supra*, at 4, 156 A. 625.

█ The waiver "may be inferred from the acts of the insurer or its authorized representatives." *Collins v. Home Insurance Co., supra*, 110 Pa.Super. at 75, 167 A. at 623. It is well established that the power of the agent to waive protective provisions of the policy is limited by his grant of authority. The insurer will only be bound by the waiver of an agent acting within the scope of his actual or apparent authority. J. Appleman, *Insurance Law & Practice*, § 9121 (1968). Where there is a dispute over the authority of the agent to waive a policy term, the question is one of fact for the jury. *Couch on Insurance 2d*, § 26.313 (1960).

█ Pennsylvania cases have established that authority to waive a written notice of loss provision may be exercised by an agent who executed the policy and reported the losses to the insurer. *Gough v. Halperin*, 306 Pa. 230, 234–35, 159 A. 447 (1932). Here, plaintiff alleges that Seeger countersigned the policies, collected the premiums and constituted plaintiff's only contact with the defendant insurance companies. Under these circumstances, the scope of Seeger's authority is a question for the jury. We also conclude that there is a genuine issue of material fact with respect to whether his remarks amounted to a waiver, or at least a tolling of the proof of loss and limitation of suit provisions. *Gough v. Halperin, supra* at 235, 159 A. at 448. ("The company cannot take advantage of the insured's inactivity caused directly by the assurance of its authorized agent"). Therefore, since genuine issues of material fact remain with respect to the scope of Seeger's authority and the effect of his alleged statements, plaintiff's failure to comply with the notice of loss and limitation of suit provisions does not entitle the defendants to summary judgment.

## OTHER EXCLUSIONS

█ Fireman's contends that, even if plaintiff's recovery is not barred by its failure to comply with the time limitations in the policy, the loss sustained by plaintiff

fell within three exclusion clauses of the excess policy.[2]

Paragraph K4 of the excess policy specifically excluded coverage for losses resulting from "pilferage, appropriation or concealment of any property covered due to any fraudulent, dishonest or criminal act of any employee while working or otherwise." Plaintiff concedes that all but one of the thieves was an employee of ACF, but contends that the defendant's resort to this provision is barred by Seeger's representations at the time the policy was purchased. Plaintiff asserts that Seeger told the plaintiff that the policy provided complete coverage which was co-extensive with that of the basic policy. It is clear that the excess policy is at least in some ways more restrictive than the basic policy since the Federal policy does not contain any exclusion for employee theft.

■ In some circumstances, an insured may obtain reformation of a policy where he has relied upon the expertise and representations of the insurer to frame the coverage included in the policy. *See* J. Appleman, *Insurance Law & Practice*, § 9166 (1968); *Couch on Insurance 2d*, § 66:41 (1967). "Where a policy does not represent the intention of the parties solely because of some fault or negligence of the insurer, equity will reform it so as to make

it express such intention." *Id.* § 66:42. "[W]here a mistake of an agent is relied on, it must be material to warrant reformation, or there must be a mistake of one party and fraud of the other." *Id.* § 66:43 (footnotes omitted). The contentions of ACF raise questions about the content and impact of any statements made by Seeger at the time that the policy was obtained. Answers to these questions must be left to the jury.

■ The second exclusion which Fireman's has invoked provides that the policy does not insure against any loss caused by or resulting from the "unexplained or mysterious disappearance of property . . . disclosed on taking inventory." However, since the losses are at least in part attributable to thefts by persons who have been arrested, the losses cannot be characterized as mysterious or unexplained. Summary judgment cannot be granted based upon this exclusion.

■ Finally, exclusion 4R denies recovery if the loss is the result of theft of property which is not inside a building at a location insured under the policy. Fireman's argues that the permanent trailers employed by the plaintiff as storage facilities cannot be classified as "buildings" within the policy. These permanent trailers,

---

**2.** Plaintiff contends that Fireman's is precluded from raising these exclusions since it originally refused payment because of plaintiff's failure to comply with the proof of loss and limitation of suit provisions. Plaintiff relies upon *Simons v. Safety Mutual Fire Insurance Co.*, 277 Pa. 200, 120 A. 822 (1923) in which the Supreme Court of Pennsylvania held that where the insurer's assertion of a definite reason for refusing to pay the claim leads the insured to believe that is the sole reason for refusing payment the company is barred from raising another ground later. *Id.* at 204, 120 A. 822. In *Simons*, notice of loss had been provided within the time required. The insured delayed, however, in furnishing evidence of the extent of the loss because the insurer had informed the insured that the claim would not be honored because of the alleged fraud of the insured. At trial, the defendant offered no evidence of fraud, but attempted to escape liability because of the delayed proof of loss. On appeal, the Supreme Court of Pennsylvania held that the trial court had correctly ruled that the insurer

had waived the necessity of filing proof of loss within the time expressed in the contract and that the insured was estopped from raising undue delay as a defense. The court reasoned that the insurer should not benefit where its conduct caused the undue delay.

This brief review of the facts reveals the distinguishing factor between *Simons* and the instant case. In *Simons*, the defendant's conduct led the insured to believe that the strict compliance with the terms would not be demanded. Under the facts of this case, the conduct of Fireman's in raising the other defenses did not mislead the insured since the exclusions relate to the original policy coverage at the time of the accident. There is absolutely no way in which Federal's assertion of other defenses following the loss could have misled the insured with respect to the coverage afforded at the time of the accident. Since no prejudice could have visited plaintiff by defendant's assertion of other defenses, Fireman's is not precluded from raising these exclusions at this time.

however, constitute the only storage facilities on the premises of the plaintiff and were clearly intended to be covered by the policy. The intent of the exclusion was to limit coverage for personal property left outdoors or in a vehicle of some sort. The trailers from which the meat was stolen are permanent structures which served to protect the property from the danger excluded by paragraph 4R. Since the trailers were buildings within the meaning of the policy, this exclusion does not preclude plaintiff from recovery.

In sum, since two of the exclusions are inapplicable and the effect of the third is a question of fact for the jury, we must deny Fireman's motion for summary judgment on Counts I and II.

*Count II*

Plaintiff has also made a claim for compensatory and punitive damages arising out of the settlement of a loss sustained on September 5, 1974. Plaintiff concedes that the specific claim for the lost property was settled by executing a release, but it contends that it has retained a cause of action against Federal for malicious and bad faith delay in settling the claim.

There is no question that an insurer is obligated to deal with its customer in good faith and that this obligation extends to the settlement of claims asserted against the insured. Defendant argues, however, that even assuming plaintiff has stated a cause of action it is barred by the release signed by plaintiff at the time of settlement. The release provided in pertinent part that Angelo C. Ferri, as president of ACF, in exchange for and in consideration of the payment of $28,000.00 "release, acquit and forever discharge Federal Insurance Company . . . and all other persons, firms, corporations from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses, and compensation whatsoever . . . resulting . . . from the accident, casualty or event which occurred on or about the 5th day of September, 1974."

In the absence of fraud, accident or mistake, a person accepting a release for a claim is bound by the terms of the release. *Long v. Heinberger*, 195 F.Supp. 835 (M.D.Pa.1961). The effect of the release is governed by the intention of the parties which is to be garnered from the language of the instrument. *Three Rivers Motors Co. v. Ford Motor Co.*, 522 F.2d 885 (3d Cir. 1975). "[T]he language of a release will be given its ordinary meaning unless a different meaning was clearly intended." *Wenger v. Zengler*, 424 Pa. 268, 271, 226 A.2d 653, 654 (1967).

The question presented by defendant's motion is whether plaintiff's claim for bad faith delay in settling the claim falls within "any and all claims, actions, causes of action, . . . damages, costs, loss of service expenses and compensation whatsoever . . . resulting from the accident . . . on . . . the 5th day of September, 1974." We find that it does. Plaintiff's claim is for damages sustained in the interim between the event and the settlement. The damage suffered during the delay was directly attributable to the accident of September 5, 1974 and simply should have been alleviated by a more prompt settlement. Thus the plaintiff is seeking damages for loss of service arising out of the incident. Any damages that plaintiff seeks to recoup were covered by the release. We also note that any loss caused by the delay was suffered prior to the execution of the release. Had plaintiff instituted an action for defendant's failure to pay promptly once the claim had been settled, we would have been presented with a different question. Finally, the comprehensive language employed in the release reflects the parties' intent to include any dispute relating in any way to the original loss.

We conclude that any claim for Federal's delay in settling the claim arising out of the events of September 5, 1974 was covered by the release. Therefore, we will grant defendant's motion for summary judgment on Count II.